**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KATHLEEN A. MELLUZZO,**

   **Plaintiff,**

**v.**                 **Case No.  8:05-cv-307-T-24TBM**

**PUBLIC ADVOCATE, LLC,**

   **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

  THIS MATTER is before the court on referral by the Honorable Susan C. Bucklew for a Report and Recommendation on Plaintiff's **Motion for Final Judgment as to Liability, Request for Hearing on Damages, and Supporting Memorandum of Law** (Doc. 36). Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff seeks entry of a final default judgment against Defendant on her claims of disability discrimination and retaliation. Plaintiff requests an evidentiary hearing to determine the amount of her damages. Public Advocate, LLC, is unrepresented and has not filed a response. An evidentiary hearing on this matter was conducted on March 22, 2006.

I.

  A brief review of the procedural history may be useful. Plaintiff filed this action on February 16, 2005, alleging that Defendant discriminated and retaliated against her on the basis of her handicap (multiple sclerosis) in violation American with Disabilities Act of 1990

("ADA"), the Florida Civil Rights Act of 1992 ("FRCA"), and the Florida Whistleblower Act. (Doc. 1). Defendant filed its Answer and Affirmative Defenses on March 16, 2005. (Doc. 6). Counsel for Defendant moved to withdraw on June 22, 2005, alleging that she had been unable to contact Defendant's representative after numerous attempts and that Defendant had failed to pay counsel's accrued fees. (Doc. 13). The court granted the motion to withdraw on June 23, 2006, and directed that all future mailings be sent to Defendant's corporate address until new counsel was obtained. (Doc. 14).

On July 20, 2005, the court ordered Defendant to respond to outstanding discovery within twenty days and expressly noted that the Defendant corporation could appear only by and through counsel. (Doc. 17). Thereafter, Charles Holmes, President of Public Advocate, LLC, requested and received an extension of time to comply with the court's order. (Doc. 20). On September 7, 2005, the court granted Defendant another extension of time to answer interrogatories. (Docs. 23, 24).

On October 31, 2005, Plaintiff moved for the entry of default on the ground that Defendant, a Florida Limited Liability Company, had remained unrepresented since June 23, 2005. (Doc. 25). On November 15, 2005, the court ordered Defendant to file a notice of appearance by new counsel by December 2, 2005. (Doc. 26). The motion for default was denied without prejudice. (Doc. 28). Plaintiff filed an amended motion for default on December 6, 2005, noting that Defendant had failed to comply with the court's order directing the filing of a notice of appearance of counsel by December 2, 2005. (Doc. 29). Plaintiff again requested entry of a default against Defendant for failure to retain counsel and otherwise prosecute its defense. Thereafter, the court ordered Defendant to show cause why a

2

default should not be entered against it. Defendant was expressly advised that its failure to do so would result in the immediate entry of a default. (Doc. 30). Defendant failed to comply with the court's order. Thus, the court granted Plaintiff's renewed motion for entry of default judgment. (Doc. 32). The Clerk entered default on December 22, 2005. (Doc. 33).

On February 9, 2006, the court conducted a status conference on Plaintiff's instant motion (Doc. 36). Defendant was noticed for the status conference and Mr. Holmes appeared on behalf of the company. A final evidentiary hearing on the motion was calendared for March 22, 2006. Mr. Holmes was again advised that he could not represent the company and that it was imperative that he retain counsel if he wished the company to be represented at a hearing on damages. See (Doc. 41). No representative of the Defendant appeared at the evidentiary hearing and no counsel has entered an appearance on behalf of the Defendant.

II.

By her instant motion (Doc. 36), Plaintiff seeks entry of final judgment and the award of back pay, compensatory damages, punitive damages, and injunctive relief directing that the Defendant corporation henceforth be enjoined to, and abide by, the ADA.

At the hearing, Plaintiff testified that she was hired as a part-time telephone solicitor and/or fund-raiser by Defendant in October 2002. By her testimony, Defendant assists charitable organizations in raising funds for a fee. Mr. Holmes is the company president and Michael Gareau is described as a manager with the company.

Plaintiff was diagnosed with multiple sclerosis (hereafter "MS") in February 2001. Within one week of her hiring by Mr. Holmes, Plaintiff advised him of her medical condition.

3

She advised Mr. Gareau that she suffered from MS as well.  By her description, the disease leaves her weak in the legs, affects her walking and balance, and causes her to be fatigued.  She uses a cane to assist with walking.  Despite her condition, she testified she was fully competent to perform the requirements of her job as a telephone solicitor, that is, she had no difficulty calling or speaking on the phone despite her limitations.

Shortly after beginning the job, Plaintiff observed in the office a chair that could be adjusted for height.  She advised both Mr. Holmes and Mr. Gareau that she needed to use that chair or one like it because of her MS.  By her account, the ability to sit at a particular level eased the pain that she otherwise suffered.  According to Plaintiff, Mr. Holmes and Mr. Gareau simply laughed off the request and generally did not permit her to use the chair.[1]  She did not push the matter because, as a single woman with six children, she needed the job.  For the balance of her employment, Plaintiff would usually stand for her 3 ½ hour shift.

On August 26, 2003, Plaintiff observed that the chair was not being used and she took it from the office.  When Mr. Gareau saw her sitting in the chair, he advised her that she could not sit in it because if he made a concession for her, he would have to do so with everyone else as well.  Plaintiff was taken into the office area, wherein Mr. Gareau insisted he could not make exceptions for her to use the chair.  She believed Mr. Gareau was flippant and disrespectful of her condition and she became upset and cried.  In response, Mr. Gareau advised her to get her things and leave the office.  Plaintiff asked to speak with Mr. Holmes, but Mr. Gareau declined to arrange that.  According to Plaintiff, she returned to work the next day, but was advised by a manager named Gina that she was no longer on the schedule.

---

[1] By the Plaintiff's recollection, she was allowed to use the chair on perhaps three occasions.

4

Plaintiff attempted to speak with Mr. Holmes on numerous occasions over the next couple of weeks. It was not until she filed her complaint with the EEOC that he responded. She was never offered her job back.

Plaintiff seeks back pay. She was paid $8.00 per hour for a 3 ½ hour shift, five days a week. Plaintiff successfully located a new job approximately five weeks subsequent to her termination. By her calculations, she lost $700.00 in past wages. Plaintiff also seeks compensatory damages for the pain associated with having to stand during her shift by reason of the failure to accommodate her condition and for the humiliation and embarrassment she suffered at being terminated from a job she was capable of performing.[2] Because her termination was deliberate and willful in clear violation of the ADA and the FCRA, she also seeks an unspecified sum in punitive damages. Plaintiff further seeks the entry of an injunction that affirmatively requires Defendant to comply with the all provisions of the ADA and the FCRA as they relate to disabled employees. According to her testimony, Defendant employs over 200 people with three offices in the state.

III.

An employer's failure to provide a reasonable accommodation to an otherwise qualified disabled employee constitutes discrimination under the ADA. D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1225-26 (11th Cir. 2005). Employers must provide reasonable accommodations to an employee with a known disability unless such accommodations would result in undue hardship to the employer. Lucas v. W.W. Grainger,

---

[2]Her counsel suggests that $25,000 in compensatory damages is appropriate

Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). An accommodation is "reasonable" if it enables the employee to perform the essential functions of her job.[3] LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir. 1998). The ADA also prohibits an employer from retaliating against an employee who has opposed any act or practice made unlawful by the Act. Collado v. United Parcel Serv. Co., 419 F.3d 1143, 1158 (11th Cir. 2005). A plaintiff alleging retaliation under the ADA must show that she engaged in statutorily protected activity, she suffered an adverse employment action, and that there is a causal link between the protected activity and adverse action. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998).

As for damages, the ADA expressly incorporates the remedies provided under the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the Rehabilitation Act of 1973, 29 U.S.C. § 794a. See 42 U.S.C. § 12117(a). Thus, in actions brought under the ADA for employment discrimination on the basis of disability, compensatory and punitive damages and injunctive relief are available. Attorney's fees and costs are also available to the prevailing party. See 42 U.S.C. § 12205. The central purpose in remedying a violation of the ADA is to "make the plaintiff 'whole,' to restore the plaintiff to the economic position the plaintiff would have

---

[3] According to federal regulation, a "reasonable accommodation" means, among other things, "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held . . . is customarily performed, . . . . Reasonable accommodation may include "[m]aking existing facilities used by employees readily accessible to and usable by individuals with disabilities; . . ." 29 C.F.R. § 1630.2(o)(1)(ii), (2)(I). The use of a certain type of chair may constitute a reasonable accommodation. See id., see also Worthington v. City of New Haven, 994 F. Supp. 111,114 (D. Conn. 1997) (finding plaintiff stated an ADA failure to accommodate claim by alleging employer's refusal to provide ergonomic chair after employee requested); but see Tesh v. U.S. Postal Serv., 349 F.3d 1270, 1275 (10th Cir. 2003) (finding no failure to accommodate where employer timely provided chair employee requested).

occupied but for the illegal discrimination of the employer."[4]  Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1338 (11th Cir. 1999).

As the record in these proceedings clearly demonstrates, the Defendant has willfully failed to prosecute its claims and defenses.  Instead, it repeatedly delayed proceedings in this court by delaying discovery and seeking frivolous requests for extensions of time.  From early on, the Defendant was aware of its obligation to retain counsel and it willfully failed to do so.  No effort has been made to set aside the clerk's default, and, given the Plaintiff's testimony, there appears no good cause why final judgment should not be entered again the Defendant.

The undisputed record establishes that Plaintiff had an impairment that substantially limited her ability to walk, balance, and work.  In the contemplation of the ADA and the FCRA,[5] Plaintiff was otherwise qualified as she could perform the essential functions of the job even with MS.  Her condition was known to her supervisor and the president of the company.  Despite knowledge of her condition, the Defendant failed to provide a reasonable accommodation to Plaintiff that would have allowed her to sit, as the other telephone solicitors did, during her shift.  Further, when the Plaintiff took it upon herself to use an available accommodation, she was belittled and chastised for doing so, and, when she protested, she was told to leave the premises.  When she next reported for work, she was told she was no longer on the schedule.  Her efforts to reach the president to discuss the matter went unanswered.  Thus, the record supports the Plaintiff's claims under the ADA and the FCRA.

---

[4] I find it unnecessary to address the whistleblower claim made in Count Three.

[5] Disability-discrimination claims under the Florida Civil Rights Act are analyzed under the same framework as ADA claims.  D'Angelo, 422 F.3d at 1224, n. 2.

7

As for damages, I conclude the Plaintiff is owed $700.00 in back pay and $10,000.00 in compensatory damages for pain and suffering related to the failure to accommodate her condition and her termination. The conduct of the Defendant's manager and president appears intentional, willful, and egregious and merits an award of the like sum for punitive damages. As the circumstances of this case demonstrate that it is entirely possible, perhaps even probable, that the Defendant will again engage in similar discriminatory conduct, Defendant should also be enjoined to comply with all applicable provisions of the ADA and in particular, those related to the reasonable accommodation of disabled employees.

IV.

For the foregoing reasons, it is RECOMMENDED that the court grant Plaintiff's **Motion for Final Judgment as to Liability, Request for Hearing on Damages, and Supporting Memorandum of Law** (Doc. 36) and enter final judgment as against Defendant with damages to Plaintiff in a total amount of $20,700.00, which should bear interest at the usual rate for federal court judgments. It is also recommended that Defendant be affirmatively enjoined to comply fully with all applicable provisions of the ADA and the FCRA, in particular, those related to the reasonable accommodation of disabled employees. It is further RECOMMENDED that the court reserve and retain jurisdiction over the matter of costs and fees.

    Respectfully submitted on this
    12th day of May 2006.

    THOMAS B. McCOUN III
    UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
United States District Judge
Counsel of Record